CHARLES H. DWINELLE, Appellant, *v.* THE NEW YORK
CENTRAL AND HUDSON RIVER RAILROAD COM-
PANY, Respondent.

*Railroad company — when not liable for the acts of a porter employed by a sleeping-car company.*

The plaintiff having purchased of the defendant railroad a ticket, and from a porter in charge of a drawing-room car a section therein, for a continuous passage from Geneva to New York, went to bed after having given both tickets to the porter at the latter's direction. On awakening in the morning he found that the car was standing on a side track at Utica, having been stopped there on account of a wash-out. On the afternoon of that day, after the ticket purchased from the defendant had been returned to the plaintiff, the porter accompanied him and his wife, carrying their baggage, to a temporary train which was to run to the washout, around which the passengers were to walk to take another train for New York. As the porter was leaving the train, after the plaintiff's wife had obtained a seat and the baggage had been deposited, the plaintiff asked for his sleeping-car ticket. The porter refused to give it to him or to go to the office, but agreed to show him the sleeping-car conductor; and after walking some distance from the train, and when near a group of men, said, " there is the conductor." As they passed the plaintiff asked him to tell the conductor that he was entitled to a section to New York, and on the porter replying that was none of his business, said, touching him lightly on the arm, " You must not leave me without giving me some satisfaction in this business;" thereupon the porter whirled around and, saying, "Take your hand off me or I'll hit you," struck him.

*Held,* that as the porter was not, at the time of the assault, engaged in the business of the transportation of the plaintiff, he was not acting as a servant of the defendant so as to make it liable for his acts.

*Thorpe* v. *New York Central and Hudson River Railroad Company* (76 N. Y., 402) distinguished.

Appeal from a judgment, entered in pursuance of an order dismissing the complaint.

On the 12th day of August, 1885, the plaintiff purchased of the defendant, paying therefor the regular fare, a ticket from Geneva to New York, and entered a sleeping car attached to one of the defendant's trains which was called the Norwood. He then purchased and paid for to the porter, who was in sole charge of a section in that car, and received from the porter, a ticket showing that he had purchased said section for a continuous passage from Geneva to New York. He then went to bed, having first given up his tickets to the porter, at the porter's direction. The train was due

in New York the next morning. Upon awakening the next morning the plaintiff found that the train had been run upon a side track and detained at Utica all night by reason of a washout on the defendant's track. The plaintiff's railroad ticket had been returned to him in the morning, and at about noon he was informed, as he believes by the porter, that it was intended to make up a temporary train and run down to the washout, and that he would have time to get his dinner if he desired to do so. After dinner the plaintiff's wife went back to the cars first, and upon the plaintiff's going back he met his wife, accompanied by the porter who had been in charge of the Norwood, who was carrying the plaintiff's small packages. He informed the plaintiff that the Norwood was going no further, and that he was carrying plaintiff's things over to the temporary train which was to carry plaintiff down to the washout, where the passengers were to walk around the washout and take a train on the other side for New York.

They went through the various cars of the temporary train but could not find any seats, but finally a gentleman gave the plaintiff's wife a seat, and the porter put the plaintiff's baggage down by the door of the car and turned away from the plaintiff and walked away. The plaintiff then pulled him by the sleeve and asked him for his sleeping-car ticket, and in reply the porter said that he had to show it to the company. Then the plaintiff asked him to go to the office, and he said he would not go; then the plaintiff asked him to take him to the sleeping-car conductor that was going with them. He said that he would show him the conductor, and after walking some distance they passed near a group of men, and the porter said: "There is the conductor." The porter kept on, and the plaintiff also; both came to a stop some little distance beyond the group. Before they came to a stop the plaintiff said: "Take me to him and tell him who I am; that I have a right to a section in a sleeping-car as far as New York." And the porter said in reply: "That is none of my business," and the porter turned to leave. The plaintiff then said: "You must not leave me without giving me some satisfaction in this business." The porter then turned and said: "Take your hand off me or I'll hit you." And then it was that the porter hit the plaintiff, and for the damages resulting this action was brought.

The plaintiff put in evidence the agreement between the defendant and the New York Central Sleeping Car Company, which company owned and controlled the sleeping car "Norwood." This agreement provides that the sleeping car company is to furnish sleeping cars to run in defendant's trains, and to have for their own use and benefit the sums collected for accomodations in the sleeping car, and is to indemnify the defendant against liabilities to patentees of inventions in respect to sleeping cars; and is to procure the requisite license for inventions used, and is to have the right to place in each sleeping car a conductor and porter who are to be carried without charge. This railroad company's conductors are to have the right to enter the sleeping cars to collect the railroad fares or for any purpose connected with the management of the trains, and to call upon the sleeping car company's conductors and porters to assist in maintaining in the sleeping cars the good order and discipline of the road, but are not otherwise to interfere with the business of the sleeping cars.

Upon the conclusion of the plaintiffs case the defendant moved to dismiss the complaint, upon the ground that the plaintiff had made out no cause of action against the defendant; that the cause of action stated in the complaint had not been made out; that the act complained of was not within the scope of the authority of the person who did the act; that the act complained of was not done by any servant of the defendant while engaged in performing any duty which the defendant owed to the plaintiff. This motion was granted, which ruling was duly excepted to, and from the judgment subsequently entered this appeal is taken.

*Hugh L. Cole,* for the appellant.

*Frank Loomis,* for the respondent.

VAN BRUNT, P. J.:

The question involved in this appeal seems to be, was the porter who committed the assault upon the plaintiff to be deemed a servant of the defendant? It is undoubtedly true that the defendant's servants were bound to exercise due care, even though the plaintiff was not actually upon one of its cars, to protect the plaintiff from assault, but as the act complained of was not one to be forseen and

consequently could not be guarded against, there is no evidence of want of care in this respect, and the plaintiff must recover, if at all, upon the ground that the assault was committed by one of the defendant's servants while engaged in the business of the defendants. The case of *Thorpe* v. *New York Central and Hudson River Railroad Company* (76 N. Y., 402), is relied upon by the appellant's counsel as establishing the proposition that the porter in the case at bar was, for all the purposes of this action, the servant of the defendants.

In the case of Thorpe the plaintiff was a passenger upon the defendant's train. He entered the cars at Syracuse with the intention of riding in one of the ordinary cars to Auburn. He passed through the two ordinary cars attached to the train and finding no vacant seats passed into the drawing-room car and when called upon by the porter to pay the extra charge for a seat in that car, declined to pay the sum demanded for the reason that he could find no seat in the other cars. The porter attempted to eject the plaintiff from the car, and for this assault the action was brought and the court held that if the right of the plaintiff to maintain his action depends upon the existence of the conventional relation of master and servant between the defendant and the porter at the time of the transaction in question the action could not be maintained; that the porter was actually the servant of the proprietor of the drawing-room cars. But because of the peculiar relations existing between the drawing-room car company and the railroad company, the court was of the opinion that the persons in charge of the drawing-room car were to be regarded and treated in respect of their dealings with the passengers as the servants of the defendants and that the defendants were responsible for their acts to the same extent as if they were directly employed by the company. The assault was committed in the case of Thorpe while the passenger was being transported pursuant to his contract with the railroad company, and it was to enforce a regulation of the company that the attempt was made to remove him.

In the case at bar, however, the porter had performed all the duties which as a servant of the defendant he owed to the plaintiff. He had told him that the temporary train was going on. He had transported the plaintiff's small luggage to the train, a duty which

perhaps he was not legally required to perform, and had left the plaintiff and it was because of the plaintiff's anxiety to secure sleeping accommodations, not transportation, that he pursued the porter, and it was solely and entirely in respect to that subject that the further circumstances between the plaintiff and the porter took place, which resulted in the assault.

The porter had returned to the plaintiff his passage ticket which he had taken up the evening before so that the plaintiff would not be disturbed during the night, and there was no controversy about that or about the transportation. The whole question was about something additional to that which the plaintiff's passage ticket entitled him to receive and which the railroad company had not agreed to furnish. It might be true that, under the rule laid down in the case of Thorpe, if the assault in question had been committed upon the plaintiff while upon the train, that the railroad company would have been liable, although the dispute was about sleeping car accommodations, which, under the law of 1858, might legally be furnished by another party, but it would be enlarging the rule that the porters on these cars are, constructively, the servants of the railroad company, to an unnecessary extent, to hold that when porters of these cars are in nowise engaged about the transportation of the passengers, and are not upon the train by which the passenger is to be transported, and have no connection therewith, the relation of master and servant exists, even constructively, between such porter and the railroad company.

In the case at bar, as has already been said, the porter was in nowise engaged in the business of the transportation of the plaintiff. The plaintiff had been transferred to another train with which the porter had no connection. He had given up the passage ticket to the plaintiff, had transferred his small baggage to the other train, and had gone a considerable distance from the train followed or accompanied by the plaintiff without any invitation of his, the plaintiff following him for the purpose of securing sleeping accommodations upon the other side of the washout, with the furnishing of which the defendant had nothing to do. If the defendant furnished transportation that was all it was required to do by its contract, and if in his anxiety to secure something beyond that, to which he may have been entitled from somebody else, the plaintiff met with an

obstruction from which he suffered damage, the defendant cannot be held liable therefor.

A large number of cases have been cited by the appellant in respect to the duties and obligation of the carriers of passengers, but none of them elucidate the questions which arise upon this appeal.

We are of opinion, therefore, that whatever claims the plaintiff may have against the sleeping car company for the assault committed upon him, that none exist against the railroad company for the reasons above stated.

The judgment appealed from should be affirmed, with costs.

DANIELS and BARTLETT, JJ., concurred.

Judgment affirmed, with costs.